**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STEVEN M. HOMICK,                    )
                                     )
        Petitioner,                  )        3:99-cv-0299-PMP-WGC
                                     )
vs.                                  )
                                     )        **ORDER**
RENEE BAKER, *et al.*,               )
                                     )
        Respondents.                 )
_____/

Introduction

    In this capital habeas corpus action, brought by Steven M. Homick, a prisoner on Nevada's death row, the respondents have filed a motion to dismiss (ECF No. 303). The motion to dismiss is based on the statute of limitations, the requirement of exhaustion of state-court remedies, and the procedural default doctrine, and it also raises issues regarding the cognizability of certain of Homick's claims. Homick opposes the motion to dismiss, and has filed a motion for an evidentiary hearing (ECF No. 346). The court will deny the motion to dismiss, in part with prejudice and in part without prejudice, will deny the motion for evidentiary hearing, and will direct respondents to file an answer responding to the merits of the *Brady* claims in Claim 1 of Homick's second amended habeas petition.

1   Factual Background and Procedural History

2          On Homick's direct appeal, the Nevada Supreme Court set forth the factual background of

3   the case, and summarized the evidence presented at trial, as follows:

4          Appellant Steven Michael Homick was convicted by a jury of the first-degree
           murder of three unarmed victims with the use of a deadly weapon and sentenced to
5          death. Homick was also convicted of robbery with the use of a deadly weapon, and
           burglary.

6                                       *   *   *

7
           In the early afternoon of December 11, 1985, David Tipton, unsuccessful in
8          contacting his wife by telephone concerning their planned luncheon engagement for
           the day, drove unsuspectingly to a horror scene awaiting him at his Las Vegas home.
9          After entering his residence and walking down the hall, he observed the body of a
           male sprawled across the floor at the entrance to the master bedroom. Mr. Tipton also
10         noticed that the bedroom had been ransacked and that jewelry boxes were strewn
           about on the floor. Finally, the frantic man saw the bodies of his wife, Bobbie Jean
11         Tipton, and the Tipton's housekeeper, Maria Bullock, on the floor of the walk-in
           closet containing a floor safe.
12
           The trial evidence reflects that Homick had learned of the valuable jewelry
13         owned by Mrs. Tipton as a result of his employment as a security specialist with The
           Tower of Jewels, a Las Vegas jewelry store where the victim had taken 50 to 60
14         pieces of her jewelry for appraisal and cleaning. Timothy Catt, a jeweler employed at
           The Tower of Jewels, testified that Homick told him that he had heard through his
15         wife that Bobbie Jean Tipton was a very wealthy lady with magnificent jewelry, and
           that only a portion of it had been taken to The Tower of Jewels.
16
           During the month following the murders, Homick twice showed Catt items of
17         jewelry that Catt recognized as part of a collection belonging to Bobbie Jean Tipton.
           Homick did not indicate where he had obtained the jewelry, and warned both Catt
18         and Catt's girlfriend, under threat, to keep quiet about the jewelry. Catt, who on
           occasion had worked on various pieces of the victim's jewelry, was familiar with
19         many of the items because of their unique qualities. Finally, after inquiring of Catt as
           to the value of a pear-shaped diamond ring owned by Mrs. Tipton, Homick arranged
20         to meet Catt at a commercial center. The meeting took place in Catt's automobile.
           After complaining of money problems, Homick eventually told Catt about the crimes
21         he had committed in the Tipton residence.

22         Catt's testimony concerning Homick's admissions was consistent with the
           evidence found at the scene of the crimes. Homick stated to Catt that when Mrs.
23         Tipton opened the floor safe, he shot her in the head. Homick also declared that he
           "also shot the nigger." As Homick continued the search for money inside the house,
24         the doorbell rang. Homick answered the door, "yanked" the man inside and "offed
           him." The latter victim, James Meyers, was a deliveryman for a local steak and
25         seafood business. Catt, fearful of Homick, did not reveal his knowledge of Homick's
           criminal conduct to the police until after Homick was taken into custody.

26

2

Autopsy examinations of the two female victims revealed that each had been shot in the head three times, evincing wounds consistent with those made by .22 caliber bullets. An autopsy on the body of James Meyers disclosed two bullet wounds to the head and one .38 caliber bullet wound to the anterior chest. The trial evidence revealed that Homick had possessed handguns consistent with those used in killing the three victims.

We deem it unnecessary to recite in detail the full extent of the evidence adduced at trial in support of the State's case against Homick. To characterize the evidence of his guilt as overwhelming is an evaluation fully supported by the record. The evidence of record vividly portrays the picture of what occurred in the Tipton residence on the morning of December 11, 1985. Homick's own daughter provided police with items of jewelry taken from the Tiptons and given to her by her father. Other witnesses presented testimony clearly identifying jewelry belonging to Mrs. Tipton in the possession of Homick. Indeed, a police surveillance in California produced evidence obtained by binocular viewing of Homick and others passing pieces of jewelry, and Homick placing the jewelry in plastic bags. A search of the surveilled premises pursuant to a search warrant, produced, among other items, a stone later identified as having been specially created for, and belonging to, Bobbie Jean Tipton.

Additional evidence of Homick's guilt included testimony by a long time friend and criminal confederate of Homick's, Michael Dominguez, who, at Homick's behest, attempted to murder a man by the name of Craig Maraldo to satisfy a drug debt owed to Homick. A firearms expert, Richard Good, testified that the eight .22 caliber Remington long rifle expended cartridge casings recovered from the Tipton house were fired from the same weapon as six of the seven expended casings found at Maraldo's residence. Moreover, Dominguez testified that on the afternoon of the day of the Tipton murders, he saw in Homick's car the same .22 Ruger with silencer that Homick had loaned to Dominguez to kill Maraldo.

In January of 1986, Ronald Byrl, another of Homick's associates, was arrested and his house examined pursuant to a warranted search. Among the items uncovered by the search were a diamond ring and two handguns, a .38 and a .22, both equipped with silencers. Byrl testified that Homick brought a number of pieces of jewelry to him in order to use his portable grinder to clean the items and remove identifying markings. Homick explained to Byrl that the jewelry came "from a good job." Also included among the items taken to Byrl were several rings, a lady's blue Piaget wristwatch, and a man's Rolex watch later identified as belonging to David and Bobbie Jean Tipton. Byrl testified that Homick had also asked him to store eight handguns.

As previously stated, it is unnecessary to recite fully the evidence of Homick's guilt. The qualitative and quantitative magnitude of the evidence against Homick leaves slight room for doubt concerning the verity of his guilt. [Footnote: A pen register device monitoring Homick's phone line had been secured by the FBI in connection with a prior investigation. The device revealed that Homick had placed a call to the Tipton residence on December 2, 1985, and on the evening of the date of

3

1    the murders. Homick had also asked a friend in the police department to run a check
2    on the registration of two vehicles; both vehicles were registered to the Tiptons.]

3    *Homick v. State*, 108 Nev. 127, 129-32, 825 P.2d 600, 602-03 (1992).

4    The Nevada Supreme Court affirmed the judgment of conviction, and Homick's sentences,
5    on January 27, 1992. *See Homick*, 108 Nev. at 142, 825 P.2d at 610. The Nevada Supreme Court
6    denied Homick's petition for rehearing on May 18, 1992. *See* Petitioner's Exhibit 99 (ECF No.
7    342).[1]

8    Homick then filed a state-court post-conviction habeas corpus petition on May 14, 1993.
9    *See* Respondents' Exhibit 3 (ECF No. 305). The state district court held an evidentiary hearing, and,
10   on November 14, 1994, denied Homick's petition. *See* Respondents' Exhibit 4 (ECF No. 305).
11   Homick appealed, and, on April 3, 1996, the Nevada Supreme Court affirmed. *See Homick v. State,*
12   112 Nev. 304, 913 P.2d 1280 (1996). Homick's petition to the United States Supreme Court for a
13   writ of certiorari was denied on December 2, 1996. *See* Petitioner's Exhibit 180 (ECF No. 256).

14   On April 22, 1997, Homick filed, in this court, a federal habeas petition, which was
15   designated case number CV-N-97-0240-DWH(PHA). *See* Petitioner's Exhibit 42 (ECF No. 255).
16   That action was dismissed without prejudice on June 23, 1997. *See* Petitioner's Exhibit 43 (ECF
17   No. 255).

18   Meanwhile, on May 28, 1997, Homick filed a second state-court habeas petition. *See*
19   Petitioner's Exhibit 103 (ECF No. 342). The state district court dismissed that petition on
20   November 24, 1997. *See* Petitioner's Exhibit 124 (ECF No. 342). Homick appealed, and, on
21   January 15, 1999, the Nevada Supreme Court dismissed the appeal. *See* Petitioner's Exhibit 3
22   (ECF No. 283).

23   On June 3, 1999, Homick initiated this action. *See* Petition for Writ of Habeas Corpus
24   (ECF Nos. 1, 6). Counsel was appointed for Homick, and discovery proceedings ensued.

25

26   [1] As there are several sets of exhibits filed by both petitioner and respondents, when referring to an exhibit in this order, the court indicates which party filed the exhibit, and provides, in parentheses, the location of the exhibit in the electronic file for the case.

4

On March 13, 2008, Homick filed an amended petition (ECF No. 248).  The case was then stayed, on July 10, 2008, to allow Homick a third round of state-court habeas litigation (ECF No. 268).

Homick then filed his third state-court habeas petition.  *See* Petitioner's Exhibit 3 (ECF No. 293).  After holding an evidentiary hearing, the state district court denied the petition on October 13, 2009.  *See* Petitioner's Exhibit 128 (ECF No. 342).  Homick appealed, and, on October 18, 2011, the Nevada Supreme Court affirmed.  *See* Petitioner's Exhibit 4 (ECF No. 283).

The stay of this action was lifted on November 15, 2011 (ECF No. 278).  Thereafter, on January 20, 2012, Homick filed his second amended habeas petition, which is now the operative petition in the case (ECF No. 282).

On August 1, 2012, respondents filed a "Motion for Compliance with Rule 2 of the Rules Governing Section 2254 Cases in the United States District Court, LSR 3-1, and Docket #61" (ECF No. 292), asserting that Homick had not, in his second amended petition, provided sufficient detail regarding exhaustion of his claims in state court, and asserting that Homick had improperly included multiple discrete claims within each numbered claim in the second amended petition.  The court denied that motion on October 25, 2012 (ECF No. 297).  The court declined to require Homick to reorganize his claims, and ruled that – at least in his opposition to respondents' motion – Homick provided sufficient detail regarding his position with respect to his exhaustion of claims in state court.  *See* Order entered October 25, 2012 (ECF No. 297).

On March 19, 2013, respondents filed their motion to dismiss (ECF No. 303).  On September 20, 2013, Homick filed his opposition to the motion to dismiss (ECF Nos. 350, 351).  A redacted version of  the opposition, and several exhibits, were filed normally (ECF No. 350); an unredacted version of the opposition, and other exhibits, were filed under seal, with leave of court (ECF No. 351).  *See* Order entered September 25, 2013 (ECF No. 349).  Homick served a copy of the sealed material on respondents' counsel, under the condition that the Attorney General not disclose the contents of that material to anyone outside the Attorney General's Office or in any public filing.  *See id.*  The court invited respondents to respond, setting forth their position

concerning the sealing of the unredacted opposition to the motion to dismiss and related exhibits,

and the restrictions placed upon respondents with respect to their handling of those materials, and

the court invited Homick to reply.  *See id.*  The parties filed that briefing (ECF Nos. 357, 360).

On December 2, 2013, the court directed Homick to serve upon respondents certain other sealed

material.  *See* Order entered December 2, 2013 (ECF No. 363).  Respondents then filed their reply

in support of the motion to dismiss on January 10, 2014 (ECF No. 167).

With his response to the motion to dismiss, on September 20, 2013, Homick filed a motion

for evidentiary hearing (ECF No. 346).  Respondents filed an opposition to that motion on

January 9, 2014 (ECF No. 365).  Homick filed a reply in support of his motion for evidentiary

hearing on February 18, 2014 (ECF No. 371).

The Court's Handling of The Current Motions and Further Litigation of this Action

Homick's second amended petition for writ of habeas corpus includes 23 claims.  *See* Second

Amended Petition (ECF No. 282).  In their motion to dismiss, respondents assert that parts of

Claim 1, and all of Claims 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and

23, are barred by the statute of limitations and should be dismissed.  Motion to Dismiss (ECF No.

303), pp. 68-90.  Respondents also assert that Homick's claims that his state post-conviction counsel

was ineffective, which according to respondents, are found in Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12,

13, 14,  15, 16, 17, 18, 19, 20, 21, 22, and 23, are not grounds for habeas corpus relief and should be

dismissed.  *Id.* at p. 91.  Respondents also assert that Homick's submission, in support of his second

amended petition, of exhibits not presented in state court, renders his claims in part or completely

unexhausted in state court and subject to dismissal on that basis as well.  *Id.* at 92-95.  Respondents

next assert that, aside from the question of Homick's submission of new evidence in federal court,

based on a comparison of Homick's claims in his second amended petition to the claims he

presented to the Nevada Supreme Court, all of Homick's claims are in part or completely

unexhausted in state court and subject to dismissal.  *Id.* at 95-125.  Respondents assert next that

Claim 5 is frivolous and must be dismissed.  *Id.* at 125-26.  Finally, respondents assert that parts of

6

Claims 1, 11, and 23, and all of Claims 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 are procedurally defaulted and subject to dismissal on that ground as well. *Id*. at 127-32.

In his motion for evidentiary hearing, Homick states several reasons why he believes an evidentiary hearing is necessary to the resolution of much of the motion of dismiss.   In the briefing of that motion, Homick suggests a course of action with respect to the management of the further litigation of this complex action. *See* Reply in Support of Motion for Evidentiary Hearing (ECF No. 371), pp. 5-13.  Homick suggests that the court should structure the remainder of the proceedings such as to first resolve Claim 1 of his second amended habeas petition. *Id*.  Homick appears to believe that Claim 1 includes relatively strong claims, the resolution of which, in his view, might moot the remainder of his claims. *Id*.  Homick takes the position that the motion to dismiss with respect to Claim 1 alone can be resolved without need for an evidentiary hearing. *Id*.

The court generally agrees with Homick's suggestion with respect to the management of the further litigation of this action.  The court agrees that certain portions of Claim 1 should be resolved, on their merits, without further delay, and, in particular, without the delay that would be caused by an evidentiary hearing relative to the resolution of respondents' procedural defenses to Homick's other claims.  In light of the complexity and age of this action, in the interests of justice, and in the interests of judicial economy, the court will accept Homick's suggestion and will move this case to the resolution of certain portions of Claim 1 on their merits.

The court will, however, limit further than is suggested by Homick, the claims that will be litigated first.  Claim 1 includes three sorts of claims: claims that the prosecution wrongfully suppressed exculpatory evidence, under *Brady v. Maryland*, 373 U.S. 83 (1963); claims that the prosecution knowingly used false testimony, under *Napue v. Illinois*, 360 U.S. 264 (1959); and claims of ineffective assistance of trial counsel, under *Strickland v. Washington*, 466 U.S. 668 (1984).  The court will move this case, forthwith, toward resolution of the *Brady* claims in Claim 1; the *Napue* and *Strickland* claims in Claim 1, and all Homick's other claims, will be addressed subsequently, at an appropriate time, if necessary.

1   By handling Homick's claims in this order, the court reaches as efficiently as possible the

2   merits of what Homick appears to believe are his strongest claims.  Moreover, this approach will

3   allow the court to obtain briefing, and what factual development is warranted, with respect to the

4   merits of Homick's *Brady* claims, which are at the heart of his claims of actual innocence, before

5   addressing, if necessary, whether Homick can, by means of those claims of actual innocence,

6   overcome the procedural defenses asserted by respondents in response to his other claims for relief.

7   *See* Opposition to Motion to Dismiss, pp. 56-81.  The court finds this to be the most efficient, and

8   most just, way forward in this case.

9   In this order, then, the court resolves -- and denies with prejudice -- the motion to dismiss

10   with respect to  Homick's *Brady* claims in Claim 1.  The court denies the remainder of the motion to

11   dismiss, with respect to Homick's *Napue* and *Strickland* claims in Claim 1, and all of Claims 2

12   through 23, without prejudice.  Respondents will be allowed to re-assert their procedural defenses to

13   Homick's *Napue* and *Strickland* claims in Claim 1, and all of Claims 2 through 23, if necessary, at

14   an appropriate time, after the *Brady* claims in Claim 1 are resolved on their merits.

15   Statute of Limitations

16   The AEDPA Statute of Limitations, and It's Application to this Case, Generally

17   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a

18   one-year statute of limitations applicable to federal habeas corpus petitions.  The statute provides:

19   (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas
   corpus by a person in custody pursuant to the judgment of a State court.  The
20   limitation period shall run from the latest of –

21   (A) the date on which the judgment became final by the conclusion of
   direct review or the expiration of the time for seeking such review;

22   
23   (B) the date on which the impediment to filing an application created
   by State action in violation of the Constitution or laws of the United
   States is removed, if the applicant was prevented from filing by such
24   State action;

25   (C) the date on which the constitutional right asserted was initially
   recognized by the Supreme Court, if the right has been newly
26   recognized by the Supreme Court and made retroactively applicable to
   cases on collateral review; or

8

1          (D) the date on which the factual predicate of the claim or claims
2          presented could have been discovered through the exercise of due
      diligence.

3    28 U.S.C. § 2244(d)(1)(A-D).

4          For convictions that became final prior to the enactment of the AEDPA, such as Homick's,

5    the one-year limitations period began to run on the effective date of the AEDPA, April 24, 1996.

6    *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).

7          The habeas petitioner is entitled to statutory tolling of the limitations period while a

8    "properly filed application for State post-conviction or other collateral review with respect to the

9    pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The AEDPA limitations period is

10   also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). A petitioner may be

11   entitled to equitable tolling if he can show "'(1) that he has been pursuing his rights diligently, and

12   (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.*

13   (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

14         When the AEDPA statute of limitations went into effect, on April 24, 1996, and began

15   running with respect to Homick's federal habeas petition, Homick had just completed litigation of

16   his first state-court habeas action. The Nevada Supreme Court affirmed the denial of Homick's first

17   state-court habeas petition on April 3, 1996. *See Homick v. State,* 112 Nev. 304, 913 P.2d 1280

18   (1996).

19         Following that ruling of the Nevada Supreme Court, Homick petitioned to the United States

20   Supreme Court for a writ of certiorari, and that petition was denied on December 2, 1996. *See*

21   Petitioner's Exhibit 180 (ECF No. 256). In their motion to dismiss, respondents consider that

22   petition for certiorari to have tolled Homick's limitations period, under 28 U.S.C. § 2244(d)(2).

23   *See* Motion to Dismiss, pp. 69-70. Respondents, therefore, see Homick's one-year limitations

24   period as beginning to run on December 2, 1996, when the Supreme Court denied the petition for

25   certiorari. *Id.* However, as the United States Supreme Court has interpreted section 2244(d)(2), a

26   petition for writ of certiorari is not considered part of the state-court habeas action for purposes of

1    statutory tolling under 28 U.S.C. § 2244(d)(2). *See Lawrence v. Florida*, 549 U.S. 327, 331-36

2    (2007). Homick's one-year limitations period began to run on April 24, 1996, when AEDPA went

3    into effect, and Homick had no pending action at that time to toll that limitations period.

4            On April 22, 1997, two days before his one-year limitations period was to expire, Homick

5    filed a federal habeas corpus action, case number CV-N-97-0240-DWH(PHA). *See* Petitioner's

6    Exhibit 42 (ECF No. 255). In that action, Homick promptly filed a motion requesting that the case

7    be stayed and held in abeyance, while he returned to state court to exhaust claims. *See* "Motion for

8    an Order Holding Case in Abeyance," docket number 3 in case number CV-N-97-0240-

9    DWH(PHA), filed June 23, 1997.[2] In that motion, Homick stated that he "filed his federal Writ of

10   Habeas Corpus out of an abundance of caution, so as to ensure that the enforcement of his federal

11   constitutional rights is not frustrated by the recent enactment of 28 USC section 2244(d)(1), which

12   contains a one-year statute of limitation for all federal habeas corpus cases." *Id*. at 3. Homick noted

13   that there was a statutory tolling provision at 28 U.S.C. § 2244(d)(2), but stated, accurately, that

14   there was then no case law defining what constituted "properly filed" state court litigation. *Id*. He

15   continued: "[B]ecause Homick does not wish to risk losing access to the federal courts based on a

16   prediction about how 'properly filed' will eventually be construed, he [has] filed a federal habeas

17   corpus petition now to ensure compliance with the new limitations provision." *Id*. Homick cited

18   *Calderon v. District Court* (*Gordon*), 107 F.3d 756 (9th Cir.1997), and *Fetterly v. Paskett*, 997 F.2d

19   1295 (9th Cir.1993), in support of his motion for a stay. *Id*. at 3-4. On June 23, 1997, the court

20   ruled as follows on Homick's motion for a stay:

21           Petitioner states that this action was commenced as a precautionary measure
         regarding the one year filing limitations period, codified at 28 U.S.C. § 2244(d)(1),
22       and the tolling provision at § 2244(d)(2) regarding "properly filed" state court post
         conviction proceedings. According to the facts as represented in the petition (#1) and
23       motion (#3), petitioner's one-year "time clock" did not commence to run until
         December 2, 1996, when his petition for writ of certiorari was denied. *See*, *Calderon*

24

25           [2]    The court takes judicial notice of the entire record in case number CV-N-97-0240-
26   DWH(PHA). *See* Fed.R.Evid. 201; *see also United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980)
     ("[A] court may take judicial notice of its own records in other cases....").

*v. U.S. Dist. Court* (*Beeler*), 112 F.3d 386 (9th Cir.1997). The "time clock" would stop running the date that he filed his second post conviction petition and not start again until the appellate process regarding that action has been completed. Therefore, the present action is premature.

It is therefore ordered that the motion to hold in abeyance (#3) is denied. The petition for writ of habeas corpus is premature and is therefore dismissed without prejudice. This action is closed.

*See* Order filed June 23, 1997, and entered June 25, 1997, docket number 4 in case number CV-N-97-0240-DWH(PHA), pp. 1-2.

In retrospect, in light of the subsequent development of the law governing the AEDPA statute of limitations, two statements made by the court in the June 23, 1997, order in case number CV-N-97-0240-DWH(PHA), are inaccurate. First, as is discussed above, a petition for writ of certiorari is not considered part of a state-court habeas action, for purposes of the statutory tolling of the AEDPA limitations period under 28 U.S.C. § 2244(d)(2), and therefore does not toll the AEDPA limitations period under that statute. *See Lawrence*, 549 U.S. at 331-36. Second, a successive state-court habeas petition does not necessarily qualify as "properly-filed" for purposes of 28 U.S.C. § 2244(d)(2), and may not toll the limitations period under that statute, if the state court rules that it was filed outside the state-law limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (A state-court habeas petition is not "properly filed," under section 2244(d)(2), if the state court rules the petition untimely as a matter of state law.). Because the court made those now-incorrect statements regarding the operation of the statute of limitations, in order to prevent any injustice, the court grants Homick equitable tolling for the period during Homick's 1997 petition for certiorari to the United States Supreme Court, and for the period during the pendency of Homick's second state-court habeas petition. *See Ford v. Pliler*, 590 F.3d 782, 784 (9th Cir.2009) (equitable tolling warranted when petitioner is affirmatively misled by a misstatement of the court).

The Nevada Supreme Court affirmed the denial of Homick's first state-court habeas petition on April 3, 1996. *See Homick v. State,* 112 Nev. 304, 913 P.2d 1280 (1996). Homick then filed a timely petition to the United States Supreme Court for a writ of certiorari, which was denied on

11

December 2, 1996.  *See* Petitioner's Exhibit 180 (ECF No. 256).  The court grants Homick equitable tolling for the time from April 24, 1996, when the AEDPA actually went into effect and the limitations period otherwise would have begun to run, to December 2, 1996, when the petition for certiorari was denied.

Homick filed his second state-court habeas petition on May 28, 1997.  *See* Petitioner's Exhibit 103 (ECF No. 342).  The state district court dismissed that petition on November 24, 1997.  *See* Petitioner's Exhibit 124 (ECF No. 342).  Homick appealed, and, on January 15, 1999, the Nevada Supreme Court dismissed that appeal.  *See* Petitioner's Exhibit 3 (ECF No. 283).  The court grants Homick equitable tolling for the time from May 28, 1997, to January 15, 1999.

Homick's limitations period ran, then, from December 2, 1996, when his certiorari petition was denied, to May 28, 1997, when he filed his second state-court habeas petition, a period of 177 days.  Homick's limitations period ran beginning January 15, 1999, when the Nevada Supreme Court ruled on his second state-court habeas petition.

Between January 15, 1999, and June 3, 1999, when Homick filed his original petition in this case, 139 days passed.  Adding those 139 days to the 177 days that passed between December 2, 1996, and May 28, 1997, a total of 316 days of Homick's one-year limitations period ran out before he filed his original habeas petition in this federal habeas corpus action.  That is less than a year, by 49 days.  Homick's original habeas petition in this action was, therefore, timely-filed, within the one-year limitations period of 28 U.S.C. § 2244(d)(1).

The one-year AEDPA limitations period ran out on July 22, 1999, 49 days after Homick initiated this action.  *See Duncan v. Walker,* 533 U.S. 167 (2001) (AEDPA limitations period is not tolled during federal habeas corpus action).

Homick's first amended habeas petition in this action was filed more than eight years later, on March 13, 2008 (ECF No. 248), and his second amended habeas petition in this action was filed almost four years after that, on January 20, 2012 (ECF No. 282).  The claims in Homick's second amended petition are substantially the same as those in his first amended habeas petition.  *Compare*

First Amended Petition (ECF No. 248) *and* Second Amended Petition (ECF No. 282).  Therefore, to be considered timely, a claim in Homick's first and second amended petitions must relate back, under Federal Rule of Civil Procedure 15(c), to one or more claims in his original petition (ECF No. 6), must be subject to a later limitations period commencement date under 28 U.S.C. § 2244(d)(1), or must qualify for some other form of tolling.

Relation Back of *Brady* Claims to Original Petition

Homick argues, in opposition to the motion to dismiss, that all of Claim 1 relates back, under Federal Rule of Civil Procedure 15(c), to claims in his timely-filed original habeas petition. Opposition to Motion to Dismiss, pp. 114-17.

Claims in an amended petition for writ of habeas corpus relate back to the original petition, under Federal Rule of Civil Procedure 15(c), if they arise out of "a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  "An amended habeas petition ... does not relate back ... when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id*. at 650.

In Claim 1 of his second amended habeas petition, Homick claims that his "due process rights were violated by the state's suppression of exculpatory evidence and the knowing use of false testimony in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution."  Second Amended Petition (ECF No. 282), p. 7.  The *Brady* claims in Claim 1 involve several discrete categories of exculpatory information allegedly not disclosed by the prosecution.  Those categories of information, as organized by Homick, are as follows: (1) information provided by Art Taylor regarding Homick's whereabouts on the morning of the Tipton murders, and information regarding FBI Agent Donn Owens' surveillance of Homick and observation of his driving habits  (*see* Second Amended Petition, pp. 13-20); (2) information regarding Homick's whereabouts from January 27 to 29, 1986, information regarding Homick's whereabouts from January 1 to 12, 1986, information regarding Timothy Catt's immunity for the Tipton murders, and information regarding Catt's connection to, and immunity for, the "Branum

murders" in Florida (*see id*. at 20-29); (3) information regarding Los Angeles Police Department (LAPD) Detective Jack Holder's book deal (*see id*. at 29-31); and (4) information regarding the Maraldo/McDowell shooting (*see id*. at 31-34). Homick claims that such information was obtained in the course of a joint investigation by the Las Vegas Metropolitan Police Department (LVMPD), the Los Angeles Police Department (LAPD), and the Federal Bureau of Investigation (FBI), but was not disclosed to the defense. *Id*. at 7-34.

In Ground 3 of his original petition in this case, Homick, citing *Brady*, alleged the following:

> The Petitioner's state court conviction and sentence are unconstitutional, in violation of Petitioner's Fifth and Fourteenth Amendment right to due process of law in that the joint prosecution team failed to collect and preserve or intentional[ly] destroyed exculpatory evidence during the investigation of the case....

Petition for Writ of Habeas Corpus (ECF No. 6), p. 12. That claim, in Ground 3 of Homick's original petition, goes on to assert that the investigators failed to preserve, and disclose to the defense, information that related to Homick's whereabouts on the morning of the Tipton murders, and that therefore had a bearing on Homick's alibi defense. *Id*. at 12-18.

In Ground 7 of his original petition, Homick, again citing *Brady*, alleged:

> Substantial exculpatory material was withheld from HOMICK until long after his Nevada trial. This information would have had a substantial impact on the course of the trial and the decision of the trial jury.

> \*   \*   \*

> Throughout the course of the trial and at the evidentiary hearing on the Post Conviction Petition, no doubt existed that the prosecution of HOMICK was the result of a joint investigative effort by the California and Nevada authorities and the federal government. No evidence to the contrary was offered by the State. In such a joint investigation the knowledge and information gathered by one agency is chargeable to the other. It is no defense to a constitutionally based *Brady* claim that one branch of the prosecution withheld information from the other branch. *United States v. Antone*, 603 F.2d 566 (5th Cir.1979).

> \*   \*   \*

> The evidence, however, is uncontroverted that Las Vegas homicide detectives were working hand-in-hand with the FBI and the Los Angeles Police Department.

1    *Id*. at 35-36.  In Ground 7 of his original petition, Homick went on to assert that the prosecution

2    wrongfully suppressed information about a meeting between Homick and Art Taylor, an FBI

3    informant, on the day of the Tipton murders, information that Homick asserts was relevant to his

4    alibi defense and exculpatory.  *Id*. at 39-41.

5         In Ground 13 of his original petition, Homick claimed:

6              HOMICK'S constitutional rights under the Fifth and Fourteenth Amendments
             to due process and fundamentally fair trial have been violated by the continued
7              concealment of exculpatory evidence.

8              Attached hereto are letters detailing the voluminous records that have
             heretofore been hidden from HOMICK.  The veracity of informant Stewart Seigal
9              was crucial to numerous search warrant and wiretaps.  If reliance upon Seigal could
             be shown to be unconstitutional much of the evidence used to convict HOMICK
10             would be rendered inadmissible.

11   *Id*. at 60-61.

12        Also, in his original petition, Homick indicated that he intended to expand his *Brady* claims

13   based on information that he expected to discover by means of his Freedom of Information Act

14   (FOIA) litigation, and by means of discovery in this case.  *See id*. at 5.

15        Homick's *Brady* claims, in Claim 1 of his second amended habeas petition, relate back to his

16   original petition, under Federal Rule of Civil Procedure 15(c) and *Mayle*, and are therefore timely

17   filed, within the AEDPA one-year limitations period.

18        In *Mayle*, the Supreme Court recognized that Federal Rule of Civil Procedure 15(c) applies

19   in federal habeas proceedings, and held that "[a]n amendment of a pleading relates back to the date

20   of the original pleading when ... the claim ... asserted in the amended pleading arose out of the

21   conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

22   *Mayle*, 545 U.S. at 649.  The Court emphasized that "[s]o long as the original and amended petitions

23   state claims that are tied to a common core of operative facts, relation back will be in order."  *Id*. at

24   664.  As an example of permissible relation-back of an amended habeas claim, the *Mayle* Court cited

25   *Mandacina v. United States*, 328 F.3d 995, 1000-01 (8th Cir.2003), a case in which an original

26   petition contained a *Brady* claim asserting that the government failed to disclose exculpatory

15

1    evidence, and subsequent attempts to amend the petition involved allegations that the government

2    failed to provide a specific report.  The Eighth Circuit Court of Appeals held that the new claims

3    related back to the original claims, reasoning that "both pleadings related to evidence obtained at the

4    same time by the same police department."  *Mayle*, 545 U.S. at 575, n.7 (quoting *Mandacina*, 328

5    F.3d at 1000-01).

6          Similarly, the Ninth Circuit Court of Appeals applied the rule of *Mayle* in the context of

7    *Brady* claims in a habeas corpus action in *Valdovinos v. McGrath*, 598 F.3d 568 (9th Cir.2010),

8    *vacated on other grounds*, *Horel v. Valdovinos*, 131 S.Ct. 1042 (2011).  The holding in *Valdovinos*

9    is on point, and instructive in this case.  In *Valdovinos*, the court of appeals held that a habeas

10   petitioner could amend a *Brady* claim, which originally alleged the prosecutor withheld exculpatory

11   evidence acquired from a police investigation, to assert an allegation that the prosecutor failed to

12   disclose additional pieces of evidence originating from the same police investigation, and that the

13   amended claim would relate back.  *Valdovinos*, 598 F.3d at 575.  In the original petition in

14   *Valdovinos*, the petitioner alleged that the prosecutor withheld information about photo lineups,

15   evidence of drugs and a gun, and "favorable treatment" given to a witness.  *Id*. at 575.  The

16   amendments sought to add that the prosecutor failed to disclose an anonymous letter describing a

17   motive for the killing, and a photograph of someone of similar stature and dressed like the petitioner

18   the night of the murder.  *Id*.  The district court held that the amended claim related back to the

19   original claim.  *Id*. at 573.  The Ninth Circuit Court of Appeals affirmed, stating that "each claim ...

20   is of the same type -- exculpatory information the government had in its file that the government

21   failed to disclose at the required time ... [and] [a]s in *Mandacina* '[t]he *Brady* claims in the original

22   [petition] ... satisfy Rule 15(c) by providing the government with the notice that the statutes of

23   limitation were intended to provide.'"  *Id*. (citing *Mandacina*, 328 F.3d at 1001).

24         Applying *Mayle*, *Mandacina*, and *Valdovinos*, this court concludes that the *Brady* claims in

25   Claim 1 of Homick's second amended petition relate back to his timely original petition in this case.

26   The crux of the Claim 1 *Brady* claims is that the prosecution wrongfully withheld material

exculpatory and impeachment evidence that was in its actual or constructive possession as a result of a joint investigation conducted by the LVMPD, LAPD and FBI.  Homick made such claims in his original 1999 habeas petition, in his first amended petition, and in his second amended petition.  It does not undermine the relation back of the *Brady* claims, as articulated in the first and second amended petitions, that the amended claims include more detail about the precise material withheld -- which has been attributed by Homick to his discovery of further material supporting the claims over the past 15 years.

The *Brady* claims in Claim 1 of Homick's second amended petition are not barred by the AEDPA statute of limitations.

Exhaustion of State-Court Remedies with Respect to Homick's *Brady* Claims

As the court understands their position, respondents argue that all of Ground 1, including all Homick's *Brady* claims, are unexhausted in state court.  *See* Motion to Dismiss, pp. 102-03; Reply in Support of Motion to Dismiss (ECF No. 167), pp. 90-91.  Respondents' position in that regard is without merit.

On his direct appeal, Homick asserted a *Brady* claim regarding alleged undisclosed exculpatory information related to his alibi defense.  *See* Petitioner's Exhibit 173 (ECF No. 256), pp. 50-54).  Specifically, on the direct appeal, Homick's *Brady* claim concerned the failure of investigators to document and preserve statements made by Susan Hines, who was Homick's ex-girlfriend, and Lawrence Ettinger, regarding their activities with Homick in the hours before the Tipton murders.  *See id.*  The Nevada Supreme Court rejected that claim, ruling that Homick did not allege bad faith on the part of the State in the failure to preserve notes regarding the informal interview, and did not show that the notes, even if they existed, would have been exculpatory and material to his defense.  *See Homick v. State*, 108 Nev. 127, 138-40, 825 P.2d 600, 607-08 (1992).

In his first state-court habeas action, Homick again raised a *Brady* claim, this time regarding other alleged undisclosed exculpatory information related to his alibi defense.  *See* Petition for Writ of Habeas Corpus, Respondents' Exhibit 3 (ECF No. 305), p. 4; Petitioner's Post Hearing Brief,

Petitioner's Exhibit 71 (ECF No. 255), pp. 9-14; Appellant's Opening Brief, Petitioner's Exhibit 72 (ECF No. 255), pp. 29-37.  Homick argued in that proceeding that there was a joint investigation by the LVMPD, the LAPD, and the FBI, and that the prosecution failed to disclose exculpatory information uncovered in the joint investigation.  Appellant's Opening Brief, Petitioner's Exhibit 72 (ECF No. 255), pp. 29-37.  Specifically, in Homick's first state-court habeas action, his *Brady* claim focused on alleged exculpatory information provided by Art Taylor.  *Id*.  Taylor allegedly informed the FBI investigators that he was with Homick within a short time before the Tipton murders.  *Id*.  Homick argued that, given the information provided by Taylor, he could not have traveled to the Tipton residence in time to commit the murders.  *Id*.  Homick asserted that the information the investigators received from Taylor would have bolstered his alibi defense, not only by showing his whereabouts at a critical time, but also by corroborating statements made by Hines, who, as Homick's ex-girlfriend, was subject to impeachment.  *Id*.  The state district court held an evidentiary hearing, and, on November 14, 1994, denied Homick's petition.  *See* Respondents' Exhibit 4 (ECF No. 305).  Homick appealed, and, on April 3, 1996, the Nevada Supreme Court affirmed. *See Homick v. State,* 112 Nev. 304, 913 P.2d 1280 (1996).  The Nevada Supreme Court ruled that "[t]he record does not indicate that this was a joint investigation," and, therefore, the prosecution was not obligated to turn over material in the possession of the FBI.  *Homick,* 112 Nev. at 314-16, 913 P.2d at 1287-88.  The Nevada Supreme Court also ruled that the alleged undisclosed information was not material, because "Homick has not shown that the notes regarding the Taylor/Livingston conversation would reasonably have affected the outcome of the trial."  *Id*.

In his second state-court habeas action, Homick again raised a *Brady* claim regarding information developed in the alleged joint investigation, but not disclosed to Homick by the prosecution.  *See* Petition for Writ of Habeas Corpus, Petitioner's Exhibit 103 (ECF No. 342), pp. 8-9; Appellant's Opening Brief, Petitioner's Exhibit 75 (ECF No. 255), pp. 8-11.  In his second state-court habeas action, Homick's *Brady* claim focused on alleged undisclosed impeachment

information regarding Stewart Seigal.[3]  *See id.*  Again, Homick argued that there was a joint

investigation by the LVMPD, the LAPD, and the FBI, and that the prosecution failed to disclose

exculpatory information uncovered in that joint investigation.  *See id.*  The state district court

dismissed the petition on November 24, 1997, ruling that the *Brady* claims were barred by the law of

the case doctrine.  *See* Findings of Fact, Conclusions of Law and Order, Petitioner's Exhibit 124

(ECF No. 342).  Homick appealed, and, on January 15, 1999, the Nevada Supreme Court dismissed

the appeal.  *See* Petitioner's Exhibit 3 (ECF No. 283).  The Nevada Supreme Court ruled: "Homick

raised a *Brady* claim in regard to FBI materials in his first habeas petition, and this court rejected

that claim on the merits."  *Id.* at 2.  The Nevada Supreme Court went on to rule that, even if

Homick's *Brady* claim were construed as a new claim, Homick did not show cause for his failure to

raise it earlier, and he did not show prejudice.  *Id.*

Finally, in his third state-court habeas petition, Homick raised the same *Brady* claims that

appear in Claim 1 of his second amended petition in this case.  *See* Amended Petition, Petitioner's

Exhibit 3 (ECF No. 293), pp. 5-33; *see also* Appellant's Opening Brief, Petitioner's Exhibit 10 (ECF

No. 293), pp. 14-73 (discussing the *Brady* claims in opening brief on appeal).  After holding an

evidentiary hearing, the state district court denied that petition on October 13, 2009.  *See* Petitioner's

Exhibit 128 (ECF No. 342).  Homick appealed, and, on October 18, 2011, the Nevada Supreme

Court affirmed.  *See* Petitioner's Exhibit 4 (ECF No. 283).

In light of this procedural history, regarding Homick's extensive litigation of his *Brady*

claims in state court, including his assertion in his third state-court habeas action of the same *Brady*

claims that he asserts in this case, the court finds Homick's exhaustion of the *Brady* claims in

Claim 1 to be beyond dispute.  Those claims have been exhausted in state court.

---

[3] In the record, Seigal is sometimes referred to as "Stewart Seigal," and sometimes as "Steward Seigal."

1   <u>Procedural Default</u>

2   In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply

3   with the state's procedural requirements in presenting his claims is barred from obtaining a writ of

4   habeas corpus in federal court by the adequate and independent state ground doctrine.  *Coleman v.*

5   *Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to

6   exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural

7   requirements for presenting his federal claims has deprived the state courts of an opportunity to

8   address those claims in the first instance.").  Where such a procedural default constitutes an adequate

9   and independent state ground for denial of habeas corpus, the default may be excused only if "a

10  constitutional violation has probably resulted in the conviction of one who is actually innocent," or

11  if the prisoner demonstrates cause for the default and prejudice resulting from it.  *Murray v. Carrier*,

12  477 U.S. 478, 496 (1986).

13  To demonstrate cause for a procedural default, the petitioner must "show that some objective

14  factor external to the defense impeded" his efforts to comply with the state procedural rule.  *Murray*,

15  477 U.S. at 488.  For cause to exist, the external impediment must have prevented the petitioner

16  from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  With respect to the

17  prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained

18  of] constituted a possibility of prejudice, but that they worked to his actual and substantial

19  disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  *White v.*

20  *Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

21  In their motion to dismiss, respondents appear to assert that part of Claim 1 is procedurally

22  defaulted and should be dismissed on that ground.  *See* Motion to Dismiss, pp. 127-32; Reply in

23  Support of Motion to Dismiss, pp. 108-09.  Respondents' argument is somewhat unclear in that the

24  court cannot determine precisely what portion of Claim 1 respondents would treat as barred by the

25  procedural default doctrine.  *See id*.

26

At any rate, the court has reviewed the record -- most importantly, the Nevada Supreme Court's ruling in Homick's third state habeas action -- and has considered the question of the application of the procedural default doctrine to all the *Brady* claims in Claim 1 of Homick's second amended habeas petition, and determines that none of those *Brady* claims are barred by the procedural default doctrine.

As is discussed above, Homick raised all of his Claim 1 *Brady* claims in his third state-court habeas action. On the appeal in that action, the Nevada Supreme Court ruled as follows regarding those claims:

> Homick claims that the district court erred in dismissing the majority of his claims as procedurally barred. Because Homick filed his petition 15 years after this court resolved his direct appeal, the petition was untimely. NRS 34.726(1). Additionally, the petition was successive and therefore procedurally barred pursuant to NRS 34.810(1)(b)(2). Accordingly, in order for Homick's claims to be considered on their merits, he had to demonstrate both good cause for failing to raise the claims earlier and actual prejudice. NRS 34.726(2); NRS 34.810(1)(b), (3). Finally, because the State specifically pleaded laches, the petition was also subject to dismissal pursuant to NRS 34.800.
>
> *Brady* violations
>
> Homick argues that the State withheld material impeachment evidence in violation of *Brady*. To establish good cause and prejudice to excuse his failure to raise these claims previously, Homick must show that the State withheld the challenged evidence and that it was material for *Brady* purposes. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003). For the most part, the evidence that Homick asserts that the State withheld concerns his whereabouts on several dates in January 1986. Homick claims that this evidence, if it had been available to him at trial, could have definitively shown that Timothy Catt's testimony about Homick's confession was a fabrication, as Homick was actually out of town on the dates that Catt testified Homick was confessing to him. The district court rejected these claims related to Homick's travels in January 1986, stating that "Homick was in a position to know of his own travels during that period without receiving a disclosure from the State regarding same." Having carefully reviewed the allegedly withheld evidence, we agree with the district court. Even if we accepted Homick's contention that he did not know where he was in January 1986, this evidence has been available to him for many years through other channels and he offers no convincing explanation for the long delay in raising these claims. Moreover, even if Homick could explain the delay, this evidence is not material. Catt never specified a calendar date in his testimony and repeatedly stated that the date ranges he recalled were "best estimates only." Additionally, Homick thoroughly impeached Catt on his inability to recall exact dates. We therefore conclude that the district court did not err in dismissing these *Brady* claims related to Homick's whereabouts.

1
2
3
4
5
6
7
8
9
10

The district court did, however, find good cause to excuse Homick's failure to previously raise a claim that the State violated *Brady* when it failed to disclose an offer of immunity that was extended to Catt. At an evidentiary hearing in the district court, Homick abandoned his claim that the evidence showed an immunity deal and instead argued that the evidence was material because it showed Catt's bias. The district court disagreed that the evidence was material and denied this aspect of the *Brady* claim. Because Homick discovered this evidence in 2007, the district court was correct in determining that Homick had raised this *Brady* claim within a reasonable time of discovery. *Hathaway v. State*, 119 Nev. 248, 254-55, 71 P.3d 503, 507-08 (2003). Homick cannot, however, establish that the evidence is material and therefore cannot make the required showing of prejudice to overcome the procedural bars. *See Bennett*, 119 Nev. at 599, 81 P.3d at 8. If there were indeed evidence of an immunity deal, then it would be arguably material – but Homick conceded to the court below that nothing in the recently discovered transcript indicated that the State offered Catt immunity in Homick's case. Homick instead argued that it showed Catt's bias to testify for the State. However, the bias argument also fails because it was extensively explored at trial. Accordingly, Homick cannot demonstrate prejudice to overcome the procedural bars and we affirm the district court's judgment on this claim.

11   Order of Affirmance, Petitioner's Exhibit 4 (ECF No. 283), pp. 2-5 (footnotes omitted).

12   The Nevada Supreme Court's discussion of Homick's *Brady* claims regarding alleged

13   undisclosed information concerning his whereabouts in January 1986 included the following

14   footnote:

15
16
17
18
19
20
21

Homick argues that he has shown good cause to raise these procedurally-barred *Brady* claims because evidence of his whereabouts in January 1986 was suppressed by the State. Specifically, Homick argues that the FBI and Las Vegas police conducted a joint investigation into Homick's criminal activities, which resulted in this triple murder prosecution and a federal indictment on racketeering, murder-for-hire, and related charges. This court has concluded that "the record does not indicate that this was a joint investigation." *Homick v. State*, 112 Nev. 304, 314, 913 P.2d 1280, 1287 (1996), *overruled on other grounds by Means v. State*, 120 Nev 1001, 1012-13, 103 P.3d 25, 33 (2004). Therefore, the district court did not err in concluding that this argument is barred by the law of the case doctrine. *See Hall v. State*, 91 Nev. 314, 316, 535 P.2d 797, 798-99 (1975). However, even if we did attribute this "suppressed evidence" to the State, his *Brady* claims nevertheless fail because, as discussed below, the evidence is not material.

22   *Id*. at p.3, n.1.

23   Regarding the alleged undisclosed information provided by Art Taylor, and the alleged

24   undisclosed information concerning FBI Agent Donn Owens' surveillance of Homick, the Nevada

25   Supreme Court included the following footnote in its discussion:

26

22

1

2

3

4

5

6

> Homick also argues that material evidence was suppressed regarding an FBI interview with an informant. He asserts that the information from this interview would have "significantly narrowed the timeline" on the day of the murder – suggesting that Homick would not have had enough time and opportunity to shoot the victims. Homick made this same argument in his first post-conviction petition in 1996 and this court held that it was not material. *Homick*, 112 Nev. at 315, 9113 P.2d at 1288. Homick is precluded from rearguing this claim. NRS 34.810(1)(b), (2). We likewise reject his related claim that new evidence shows that an FBI agent who testified in support of the State's timeline lied when he stated that he observed the manner in which Homick drove as this evidence is deployed in support of his barred timeline claim.

7

*Id*. at p.3, n.3.

8

Therefore, with respect to Homick's *Brady* claims regarding the alleged undisclosed

9

information provided by Art Taylor, and the alleged undisclosed information concerning FBI Agent

10

Donn Owens' surveillance of Homick, the Nevada Supreme Court acknowledged that those claims

11

were decided on their merits on the appeal in Homick's first state-court habeas action. Indeed, on

12

the appeal in Homick's first state-court habeas action, the Nevada Supreme Court ruled as follows:

13

14

15

16

17

18

19

> Homick's defense was that he could not have been at the Tipton residence at the time the murders were committed, which his defense assumes occurred when the white Toyota truck was present. Therefore, the defense wanted these notes to provide a firmer timetable of Homick's movements the morning of the murders and to determine whether Homick had been under full FBI surveillance that morning. Testimony was presented by several witnesses that the meeting between Susan Hines, Lawrence Ettinger, and Stewart Bell ended at some point between 10:15 a.m. and 10:45 a.m. Hines and Ettinger then paged Homick on his beeper, and Hines testified Homick arrived at Bell's office between 10:15 a.m. and 10:30 a.m. Testimony indicated, however, that Homick was meeting with Taylor at the same time Ettinger and Hines were meeting with Bell and that Homick left Bell's at approximately 10:30 a.m.

20

21

22

23

24

> Under the requirements of [*Roberts v. State*, 110 Nev. 1121, 881 P.2d 1 (1994)], Homick has not shown that the notes regarding the Taylor/Livingston conversation would reasonably have affected the outcome of the trial. Testimony was given regarding Homick's movements the morning of the murders. Any evidence regarding the meeting between Taylor and Homick simply supports the State's time frame presented at the trial. Therefore, we conclude these notes were not material and that failure to provide them did not constitute a *Brady* violation. Additionally, the record indicates to this court that LVMPD provided Homick with all the evidence it had prior to trial, and that it was not in possession of the notes made by FBI agent Livingston.

25

*Homick v. State,* 112 Nev. 304, 315, 913 P.2d 1280, 1288 (1996). This was plainly a decision by

26

the Nevada Supreme Court on the merits of the *Brady* claim regarding information provided by

23

1   Art Taylor related to Homick's alibi defense.  That claim is not barred by the procedural default

2   doctrine.  Furthermore, as the Nevada Supreme Court saw the *Brady* claim related to FBI Agent

3   Donn Owens' surveillance to be subsumed within the *Brady* claim regarding information provided

4   by Art Taylor related to Homick's alibi defense, and saw the former as controlled by its merits

5   ruling on the latter, the *Brady* claim related to FBI Agent Donn Owens' surveillance, likewise, is not

6   barred by the procedural default doctrine.

7        With respect to Homick's *Brady* claims regarding information concerning his whereabouts in

8   January 1986, part of the Nevada Supreme Court's ruling, in affirming the dismissal of that claim,

9   was that the court had previously "concluded that 'the record does not indicate that this was a joint

10  investigation.'"  Order of Affirmance, Petitioner's Exhibit 4 (ECF No. 283), p.3, n.1, quoting

11  *Homick v. State*, 112 Nev. 304, 314, 913 P.2d 1280, 1287 (1996), *overruled on other grounds by*

12  *Means v. State*, 120 Nev 1001, 1012-13, 103 P.3d 25, 33 (2004).  The Nevada Supreme Court ruled

13  that, therefore, the state district court did not err in concluding that this argument was barred by the

14  law of the case doctrine.  *Id*.  That is a ruling on the merits of this *Brady* claim, removing it from the

15  ambit of the procedural default doctrine.

16       Furthermore, regarding all Homick's *Brady* claims, the Nevada Supreme held that Homick

17  did not show cause and prejudice to overcome the state-law procedural bars.  *See* Order of

18  Affirmance, Petitioner's Exhibit 4 (ECF No. 283), pp. 1-5   That ruling was not independent of

19  federal law, but, rather, was intertwined with the merits of Homick's federal *Brady* claims, because

20  the state court's cause and prejudice analysis is indistinguishable from the analysis of the merits of

21  the *Brady* claims.

22       In *Cooper v. Neven*, 641 F.3d 322 (9th Cir.2011), addressing a procedural default issue in a

23  habeas corpus action from this federal district, the court of appeals ruled as follows:

24            In this case, the Nevada Supreme Court explicitly relied on its federal *Brady*
            analysis as controlling the outcome of its state procedural default analysis. It stated,

25       "The second and third *Brady* components parallel the good cause and prejudice
            necessary to overcome the procedural bars; therefore, proving that the State withheld

26       evidence generally establishes cause, and proving that the withheld evidence was
            material establishes prejudice." Unlike other cases, where discussion of the merits of

24

1
2
3
4
5

> a claim occurs simply to determine whether the claim could have been raised earlier, here the claim is itself the justification for the default. As the Nevada Supreme Court explained, in the context of *Brady* claims, the merits of the claim dovetail exactly with the cause-and-prejudice analysis. Thus, its decision did not rest on an independent and adequate state ground and does not bar federal habeas review. *See* [*Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985)] (finding Oklahoma waiver rule not independent because there was an exception for "fundamental trial error," which in this case rested on "the determination of whether federal constitutional error has been committed").

6  *Cooper*, 641 F.3d at 332-33.  In this case, applying *Cooper*, in the context of Homick's *Brady*

7  claims, "the merits of the claim[s] dovetail exactly with the cause-and-prejudice analysis."  *Id.*; *see*

8  *also Banks v. Dretke,* 540 U.S. 668, 691(2004) (holding, in context of a cause and prejudice analysis

9  in a federal habeas action, with regard to the petitioner's failure to develop facts in state court,

10  "'[C]ause and prejudice' in this case 'parallel two of the three components of the alleged Brady

11  violation itself.'" (quoting *Stickler v. Greene*, 527 U.S. 263, 282 (1999)).

12      In ruling that Homick could not show cause and prejudice to overcome the state-law

13  procedural bars, the Nevada Supreme Court stated that "Homick must show that the State withheld

14  the challenged evidence and that it was material for *Brady* purposes," and cited both *Stickler v.*

15  *Greene*, 527 U.S. 263, 282 (1999), and *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003).  In

16  *Stickler* and *Bennett,* the United States Supreme Court and the Nevada Supreme court both expressly

17  held that the cause and prejudice analysis parallels the second and third *Brady* components.  *See*

18  Order of Affirmance, Petitioner's Exhibit 4 (ECF No. 283), citing *Stickler* and *Bennett*; *see also*

19  *Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (same as *Bennett*).

20      The court concludes that the Nevada Supreme Court's ruling on Homick's *Brady* claims was

21  not independent of federal law, but, rather, was intertwined with the merits of those federal claims.

22      The procedural default doctrine, therefore, does not bar consideration of Homick's *Brady*

23  claims, on their merits, in this federal habeas corpus action.

24  Motion for Evidentiary Hearing

25      Homick filed a motion for evidentiary hearing (ECF No. 346) in conjunction with his

26  opposition to respondents' motion to dismiss.  However, as Homick recognizes (*see* Reply in

Support of Motion for Evidentiary Hearing (ECF No. 371), pp. 5-13), an evidentiary hearing is unnecessary for the resolution of the motion to dismiss with regard to the *Brady* claims in Claim 1 of Homick's second amended petition.  In this order, the issues raised by the motion to dismiss with respect to Homick's *Brady* claims are resolved solely on the record, without any need for an evidentiary hearing.  The court, therefore, will deny Homick's motion for an evidentiary hearing.

Conclusion

As is discussed above, the court will deny respondents' motion to dismiss, with prejudice, with respect to the *Brady* claims in Claim 1 of Homick's second amended habeas petition.  With regard to the remainder of Homick's claims – the *Napue* and *Strickland* claims in Claim 1, and all of Claims 2 through 23 – the court will deny the motion to dismiss without prejudice.  After resolution of Homick's Claim 1 *Brady* claims, on their merits, the court will, if not then moot, allow respondents to re-assert any of their procedural defenses to the *Napue* and *Strickland* claims in Claim 1, and all of Claims 2 through 23.  The court will deny Homick's motion for an evidentiary hearing.  And, finally, the court will set a schedule for respondents to file an answer, responding to Homick's Claim 1 *Brady* claims, on their merits.

**IT IS THEREFORE ORDERED** that respondents' Motion to Dismiss (ECF No. 303) is **DENIED**.  With respect to the *Brady* claims in Claim 1 of petitioner's second amended habeas petition, the denial of the motion to dismiss is with prejudice; with regard to the remainder of petitioner's claims – the *Napue* and *Strickland* claims in Claim 1, and all of Claims 2 through 23, of the second amended petition – the denial of the motion to dismiss is without prejudice.

**IT IS FURTHER ORDERED** that petitioner's Motion for Evidentiary Hearing (ECF No. 346) is **DENIED**.

**IT IS FURTHER ORDERED** that respondents shall, within 60 days from the entry of this order, file and serve an answer, responding to the merits of the *Brady* claims in Claim 1 of petitioner's second amended habeas petition.

1    **IT IS FURTHER ORDERED** that the further briefing of the merits of the *Brady* claims in

2    Claim 1 of petitioner's second amended habeas petition, including the filing and briefing of any

3    ancillary motion for evidentiary hearing or motion for leave to conduct discovery, shall proceed

4    according to the schedule set forth in the order entered on November 30, 2011 (ECF No. 281).

5

6    Dated this 24th day of March, 2014.

7

8    _____
     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26